**In the Matter of COURTHOUSE SECURITY IN TIPPECANOE COUNTY.**

**No. 79S00–0109–MF–405.**

Supreme Court of Indiana.

April 12, 2002.

Michael A. Wukmer, Myra C. Selby, Melanie E. Harris, Indianapolis, IN, David W. Luhman, Douglas J. Masson, Lafayette, IN, Attorneys for Board of Commissioners of Tippecanoe County and the Tippecanoe County Council.

Karl L. Mulvaney, Phil L. Isenbarger, Nana Quay–Smith, Candace L. Sage, Indianapolis, IN, Attorneys for Hon. Ronald E. Melichar.

Stanley C. Fickle, Debra Pollack–Milgate, Indianapolis, IN, Attorneys for Amicus Curiae, Indiana Association of County Commissioners.

Jo Angela Woods, Indianapolis, IN, Attorney for Amicus Curiae, Association of Indiana Counties, et al.

PER CURIAM.

Indiana Trial Rule 60.5 establishes procedures by which intra-county disagreements about court funding may be resolved. We have also held that the procedures of that rule apply to orders of mandate relating to things other than court funding. *See Board of Comm'rs of Crawford County v. Riddle,* 493 N.E.2d 461, 462 (Ind.1986). In this instance, those procedures have been invoked in a dispute about courthouse security in Tippecanoe County.

The Tippecanoe County Courthouse is used predominantly for court-related functions. Perhaps as many as a thousand people enter and leave the courthouse on a daily basis. Incidents over the past several years have made courthouse security a topic of concern in Tippecanoe County.[1] Certain courthouse security measures were implemented by the Board of Commissioners of Tippecanoe County and the Tippecanoe County Council (collectively, "Commissioners"). However, the Honorable Ronald E. Melichar, Judge of the Tippecanoe Circuit Court, disagreed with the adequacy of the Commissioners' plan.

When efforts toward a negotiated settlement of the dispute surrounding

---

1. Security is a concern universal to all Indiana governmental officials. In response to these concerns, in 1994 we issued an order approving security guidelines and priorities for Indiana judges and courts. *See* Cause No. 95S00–9411–MS–1103.

courthouse security failed, Judge Melichar issued an order of mandate expressly directing how access to the courthouse should be controlled, including instructions on how many entrances to the courthouse should be kept open and who should be permitted to bypass security.

As provided in Trial Rule 60.5, we appointed a special judge to conduct a trial on the merits of the mandate order. After the trial, the special judge entered a final decree documenting his fact-finding and conclusions. The decree does not become effective until reviewed by the unless that review is waived. Ind. Trial Rule 60.5(B). The Commissioners declined to waive review and in due course the matter was fully briefed before this Court.

The special judge's decree overturned and modified the mandate order in significant part, concluding that some of Judge Melichar's directives exceeded his authority.[2] That decree is the subject of our review.

The decree provides that so long as proper security is placed at each open entrance, the number of entrances is a matter for the Commissioners to decide. The decree notes that the county Sheriff is primarily responsible for preserving order in the courthouse. *See* Ind.Code § 36–2–13–5(a)(6). The decree states that each entrance with public access shall have a metal detector through which persons entering the courthouse shall pass. The decree further notes that it is the responsibility of the Sheriff to supervise his deputies, to determine whether additional security measures should be employed, and to create special rules for the transportation of prisoners and for the screening of governmental employees.

In sum, the special judge's decree directs that metal detectors and security staff be put in place at as many public entrances to the courthouse as the Commissioners think appropriate to keep open. The operation and management of those security points is noted as being the responsibility of the Sheriff. We would expect that the Sheriff would continue to work, as always, with the local judiciary to understand and address their particularized security concerns.

While this case was being briefed, the Commissioners were granted leave to supplement the record with documents demonstrating that they have now voluntarily complied with the decree. The Commissioners closed six of the eight entrances to the courthouse, installed x-ray screening equipment at both entrances, and allocated funding for five additional bailiffs to assist with entrance security. These developments would seem to render moot any controversy between the parties. The Commissioners nevertheless assert that review by this Court is still warranted because: (1) the case involves separation of powers issues of great public importance; and (2) the decree lacks the flexibility necessary to account for future changes in circumstances. We address this latter issue first.

 The mandate decree already incorporates a reasonable degree of flexibility. Moreover, we perceive no reason why the

---

**2.** Seven judges work in the Tippecanoe County Courthouse. The original order of mandate overturned in part by the special judge in this case was prepared and signed by only one of those judges. We are reluctant to adopt a *per se* rule requiring that a majority of the judges in a county agree to any mandate order of collective interest to the local judiciary. However, in order to avoid the potential for conflicting mandate orders or unwelcome control over the courtrooms of other judges by one judge, that would be the preferred approach in situations where, as here, the operation of the entire county judiciary is affected.

decree might not be subject to modification if warranted by changed circumstances. The appointment of the special judge was made pursuant to Trial Rules 60.5 and 79(K). Trial Rule 79(L) gives the special judge continuing jurisdiction over this matter.

██ As to the former point, separation of powers issues can be weighty and courthouse security is an important topic. However, we see no out-of-the-ordinary separation of powers issues in need of resolution here. As in every case of this nature, the central issues are whether a mandate is reasonably necessary for the operation of the court or court-related functions and if so, are any specific fiscal or other governmental interests so severely and adversely affected as to require that the order be set aside. *Morgan Circuit Court v. Morgan County Council,* 550 N.E.2d 1303, 1304 (Ind.1990). On review, we will sustain the judgment if it is supported by substantial evidence of probative value. *Id.*

In this instance, the Commissioners have demonstrated that compliance with the decree is fiscally achievable without adverse consequences. We presume that since they took these measures on their own initiative, they ultimately concluded that these steps were reasonably necessary. The cooperation and attention given to the issue of security by the Commissioners have mooted the need for more detailed review of the special judge's decree. As already noted, the special judge retains jurisdiction to act on motion from either party. We also affirm the unchallenged directives of the special judge regarding the payment of attorneys fees in this case.

All Justices concur.